In re Charles Pender EDWARDS, III, C.P. "Bud" Edwards, "Bud" Edwards, Debtor.

Charlyne E. HADEN, Plaintiff,

v.

C.P. EDWARDS, III and Fifth Third Bank, Defendants.

Bankruptcy No. 3–88–00621.
Adv. No. 3–89–0036.

United States Bankruptcy Court,
E.D. Tennessee.

June 15, 1989.

Miller & Martin, Raymond R. Murphy, Jr., Lawrence R. Ahern, III, Richard J. McAfee, Shelley D. Rucker, Chattanooga, Tenn., Hodges, Doughty & Carson, Dean B. Farmer, Knoxville, Tenn., for plaintiff.

Lon V. Boyd, Kingsport, Tenn., for debtor.

Paine, Swiney and Tarwater, D. Michael Swiney, Knoxville, Tenn., for defendant, Fifth Third Bank.

John M. Neal, Knoxville, Tenn., Trustee.

1. On May 16, 1989, John M. Neal, trustee for the bankruptcy estate of Charles P. Edwards, III, filed a motion seeking an order permitting him to intervene in this adversary proceeding. At a hearing held June 8, 1989, the court granted the trustee's motion. The order memorializing this action has not yet been entered.

2. Plaintiff has demanded a jury to try all issues raised in her complaint. Her entitlement to a jury trial in the bankruptcy court is not addressed by this Memorandum.

## MEMORANDUM ON DEFENDANT FIFTH THIRD BANK'S MOTION TO DISMISS

RICHARD STAIR, Jr., Bankruptcy Judge.

This matter is before the court on a "Motion To Dismiss" filed April 14, 1989, by the defendant Fifth Third Bank (Bank). The Bank seeks a dismissal of Plaintiff's claims against it pursuant to Fed.R.Civ.P. 12(b)(1) and (2), incorporated into Fed.R. Bankr.P. 7012(b), averring that the bankruptcy court lacks subject matter and personal jurisdiction.[1] For reasons discussed *infra*, the court has determined that Counts I through VII in Plaintiff's complaint, asserting causes of action against the Bank, are "related" to the bankruptcy case. Consequently, this court has jurisdiction to hear and adjudicate Plaintiff's claims against the Bank consistent with the procedures dictated by 28 U.S.C.A. § 157(c) (West Supp.1989).[2]

### I

Charlyne E. Haden (Plaintiff or Haden) initiated this adversary proceeding with the filing of a complaint on February 15, 1989.[3] She alleges that she and the debtor are two of the three children of C.P. Edwards, Jr. (Edwards); that Edwards, a successful businessman, established profitable business ventures in many fields, including insurance, publishing and real estate; that by the 1950s he had established some twenty (20) corporations to carry on his business interests; and that Edwards made his three children majority shareholders in thirteen (13) of these corporations referred to in the Complaint as the "Children's Companies."[4]

3. In determining the Bank's Motion To Dismiss, "a [bankruptcy] court must accept as true Plaintiff's factual allegations ... [and] ... all reasonable inferences fairly deductible therefrom." *Reed v. Philadelphia Housing Authority (In re Reed),* 94 B.R. 48, 50 (U.S.D.C. E.D.Pa.1988).

4. The other corporations will be referred to as the "Edwards Companies." As indicated by Exhibits "A" and "B" attached to the Complaint, the "Edwards Companies" include the "Children's Companies." In this Memorandum, the

Haden further alleges that in the mid 1960s, the debtor began to manage "the Companies"; that she entrusted the management of her interests in "the Companies" to Edwards and the debtor; and that the debtor later occupied the positions of shareholder, officer and director in many of "the Companies."

Haden further alleges that starting in approximately 1962, a number of "the Companies" began to borrow funds from the Bank; that all assets of "the Companies" were pledged as collateral to secure the Bank's loans; that without her knowledge, the loans were cross collateralized; and that she was not aware of the details concerning the relationship between the Bank and "the Companies."

Haden's Complaint is grounded upon eight (8) separate counts: seven (7) assert causes of action against the Bank; one (1) asserts a cause of action against the debtor. In general, the Plaintiff outlines a course of dealings which she alleges evince joint conduct on the part of the Bank and the debtor to enrich themselves to her detriment and to the detriment of "the Companies."

Count I of Haden's complaint alleges an agreement between the three Edwards children, the Bank and a third party under which the third party was to pay $550,000 to the Bank in satisfaction of the Bank's loans to "the Companies." In exchange, the collateral pledged to the Bank was to be released to the three children. Haden avers that most of the collateral was improperly released by the Bank directly to the debtor; that this was accomplished without her knowledge or consent; that the Bank and the debtor concealed from her the release of the collateral; that she has received none of the collateral despite her ownership interest in "the Companies"; and that the Bank and debtor have refused to provide her with explanations concerning the status of the collateral. Haden avers that the Bank's conduct constitutes fraud, negligent misrepresentation, breach of contract and negligence.

The second count of Plaintiff's complaint avers an agreement between the Bank and debtor to sell certain collateral and to divide the sale proceeds equally. According to the complaint, assets of "the Companies" exceeding $2,000,000 in value were sold, the proceeds divided between the Bank and debtor, with no portion of the sales proceeds credited to the Bank's loans to "the Companies."

In the third count of her complaint, Plaintiff alleges a complicated series of transfers of real property from two corporations, one of the "Edwards Companies" and one of the "Children's Companies," to a corporation owned by the Bank. Haden contends these transfers took place without any credit or reduction in the Bank's loans to "the Companies."

Count IV relates to one of the "Children's Companies," Bald Mountain Development Corporation (Bald Mountain). Plaintiff avers that an outside corporation, Dynamic Systems, Inc. (Dynamic), acquired an 80% interest in Bald Mountain; that the Bank owned and controlled Dynamic; that as a result of its acquisition of Bald Mountain, Dynamic became liable to the Bank on a $502,200 Bald Mountain debt; that the Bank did not release Dynamic from this obligation; that the loan apparently went into default; and that the Bank foreclosed upon some of the collateral pledged by "the Companies." Haden further alleges that the Bank did not apply the proceeds from the foreclosed collateral to the loans owed by "the Companies."

In her fifth count, Haden avers that the Bank allowed the debtor to transfer real property collateralizing the Bank's loans owned by Bald Mountain to Wolf Laurel Properties, a corporation whose majority owner was the debtor; that this transfer occurred without Haden's knowledge or consent; that the Bank removed these assets as collateral for its loans to "the Companies"; and that the Bank failed to properly credit or reduce the loans by the value of the real property transferred.

In Count VI of her complaint, Haden alleges that the debtor transferred part of

two groups of corporations shall be referred to    collectively as "the Companies."

the Bank's collateral, real estate known as Swim Halle, to himself for inadequate consideration. According to the complaint, the debtor then conveyed Swim Halle to Bald Mountain in satisfaction of a debt owing Bald Mountain. After Bald Mountain was acquired by Dynamic, Bald Mountain conveyed Swim Halle back to the debtor. Haden asserts that the Bank consented to these transfers. As a result, Haden claims that Swim Halle was not available to be credited toward the Bank's loans nor was it available for distribution to Plaintiff upon payment of these loans.

Plaintiff's seventh count, entitled "General Dealings," incorporates the previous counts as follows:

> [The Bank's] conduct ... demonstrates a pattern of failing to properly credit family debts, self-dealing in family collateral, usurping in violation of its fiduciary duties the corporate opportunities of the Children's Companies and Edwards Companies and transferring for no or inadequate consideration family assets.

On the basis of these and other averments, Haden seeks an accounting of the Bank's transactions with the debtor, "the Companies," and any companies or businesses in which the debtor holds an interest.

In the eighth and final count of her complaint, Haden objects to the debtor's discharge on grounds premised upon 11 U.S.C.A. § 727(a)(3), (4) and (5) (West Supp. 1989).

Haden, in her prayer for relief, seeks a judgment against the Bank for compensatory and punitive damages in the amounts of $10,000,000 each; that Haden's claim against the debtor be established in the amount of $10,000,000; a judgment deny-

ing the debtor's discharge, or, alternatively, a determination that her claim against the debtor is excepted from discharge;[5] and a jury trial on all issues raised in her complaint.[6]

The debtor filed his answer to the Complaint on May 5, 1989. He does not challenge the jurisdiction of the court to hear this adversary proceeding.[7]

## II

Haden, in compliance with the pleading requirements of Fed.R.Bankr.P. 7008(a), avers in her complaint that this adversary proceeding is a core proceeding. Apparently foreseeing the possibility that the court will find her claims against the Bank to be noncore, she also avers that she "consents to the entry of final orders by this Court." At a hearing held May 17, 1989, on the Bank's "Motion To Dismiss," counsel for Haden conceded that her claims against the Bank are not core proceedings. She contends, however, in reliance upon *Kelley v. Nodine (In re Salem Mortgage Co.)*, 783 F.2d 626 (6th Cir.1986), that her claims against the Bank are "related" to the bankruptcy case in that resolution of these claims "will impact the handling and administration of this case." *Memorandum in Opposition to the Motion to Dismiss of Defendant Fifth Third Bank*, p. 10.

## III

Bankruptcy jurisdiction and procedure, as mandated by enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA), Pub.L. No. 98–353, is governed by §§ 1334 and 157 of title 28 of the United States Code.

---

**5.** Although plaintiff prays in the alternative for a determination that any debt found due her from the debtor be declared nondischargeable, her complaint contains no count grounded upon 11 U.S.C.A. § 523(a)(2), (4) or (6) (West 1979 & Supp.1989). A motion to amend her complaint to include a count under 11 U.S.C.A. § 523(a)(4) (West 1989) was, however, filed by Haden on June 8, 1989.

**6.** Plaintiff's right to a jury trial in bankruptcy court raises an issue independent of the jurisdic-

tional questions raised by the Bank's "Motion To Dismiss." Her jury demand will, of necessity, require future consideration by the court.

**7.** Notwithstanding the implications of Plaintiff's demand for a jury, the court's jurisdiction to hear and determine the issues raised in Count VIII of the complaint in opposition to the debtor's discharge is undisputed. 28 U.S.C.A. §§ 1334 and 157(b)(1) and (b)(2)(J) (West Supp. 1989).

Section 1334 of title 28 provides in material part:

Bankruptcy Cases and Proceedings

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C.A. § 1334 (West Supp.1989).

Section 157 of title 28 provides in material part:

Procedures

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C.A. § 157 (West Supp.1989).

Core proceedings are those proceedings in which the bankruptcy court is empowered to enter final orders and judgments. A lengthy nonexclusive list of matters which are deemed core proceedings is provided at 28 U.S.C.A. § 157(b)(2) (West Supp.1989). Noncore proceedings require, in the absence of the parties' consent, submission of proposed findings of fact and conclusions of law by the bankruptcy judge to the district court with any final order or judgment entered by the district judge. 28

U.S.C.A. § 157(c)(1) and (c)(2) (West Supp. 1989), quoted *infra* at n. 9.

■ The bankruptcy judge, pursuant to 28 U.S.C.A. § 157(b)(3) (West Supp.1989), is required to determine whether the proceeding before it is core or noncore.[8] As the Bank questions the jurisdiction of this court to hear and determine Plaintiff's claims against it, this court must determine as a preliminary matter the status of these claims as core or noncore. *See Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.),* 95 B.R. 782, 786 (Bankr.D.Colo. 1989); *Carr v. Michigan Real Estate Insurance Trust (In re Michigan Real Estate Insurance Trust),* 87 B.R. 447, 452 (E.D.Mich.1988) ("[I]t is the bankruptcy judge's duty to determine whether or not a proceeding is a core proceeding.").

■ The burden of establishing the bankruptcy court's jurisdiction over the issues in dispute is upon Haden. *Levovitz v. Verrazano Holding Corp. (In re Verrazano Holding Corp.),* 86 B.R. 755, 762 (Bankr.E.D.N.Y.1988) ("[I]t is always the burden of the party alleging bankruptcy court jurisdiction to establish its existence over the matters in dispute.").

In its analysis of the meaning of "core proceedings," the Fifth Circuit in *Wood v. Wood (In the Matter of Wood),* 825 F.2d 90 (1987), stated:

The meaning of core proceedings is illuminated ... by the textual context in which it appears. Subsection 157(b)(1) vests full judicial power in bankruptcy courts over "core proceedings *arising under title 11, or arising in a case under title 11.*" The prepositional qualifications of core proceedings are taken from two of the three categories of jurisdiction set forth in section 1334(b): proceedings "arising under" title 11, "arising in" title 11 cases, and "related to" title 11 cases. Although the purpose of this language in section 1334(b) is to

8. 28 U.S.C.A. § 157(b)(3) (West Supp.1989) provides:

The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

define conjunctively the scope of jurisdiction, each category has a distinguishable meaning. These meanings become relevant because section 157 apparently equates core proceedings with the categories of "arising under" and "arising in" proceedings.

825 F.2d at 96 (emphasis in original).

The Fifth Circuit went on to state that the phrase "arising under title 11" "describe[s] those proceedings that involve a cause of action created or determined by a statutory provision of title 11." *Id.* at 96. As to the second category of core proceedings, those "arising in" a case under title 11, the Fifth Circuit stated:

> The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise *only* in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

825 F.2d at 97 (emphasis in original and footnote omitted).

A proceeding which neither "arises in" or "arises under" a case under title 11 is noncore. As such the bankruptcy judge may nonetheless hear the proceeding if it "is otherwise related to a case under title 11." 28 U.S.C.A. § 157(c)(1) (West Supp. 1989).[9]

"Related" is not defined in § 157(c)(1). A leading treatise on bankruptcy states:

> In light of the *Marathon* case,[10] [and] the legislative history surrounding the 1984 jurisdictional provisions, it seems clear that, of the cases encompassed by section 1334(b) and the post–1984 case

law, "related proceedings" are those which (1) involve causes of action owned by the debtor that became property of the estate under section 541, and (2) *suits between third parties which in one way or another affect the administration of the title 11 case.*

1 *Collier On Bankruptcy,* ¶ 3.01[c][iv], p. 3–25 (15th ed.1989) (footnotes omitted; emphasis added). In *In re Verrazano Holding Corp.*, the court noted that "BAFJA fails to give definition to 'related to' jurisdiction." 86 B.R. at 761.

Judge Guy Cole distinguishing between core and noncore proceedings recently stated:

> Section 157 embodies the principles set forth in *Marathon.* The core/noncore dichotomy established by § 157 is based upon the distinction articulated by the *Marathon* plurality between the "restructuring of debtor-creditor relations which is at the core of the federal bankruptcy power" and the "adjudication of state-created private rights." *Marathon,* 458 U.S. at 71, 102 S.Ct. at 2871, 73 L.Ed.2d at 615. Thus BAFJA distinguishes between proceedings "arising under" and "arising in," designated as core, which may be heard and determined by bankruptcy judges, who do not have Article III status, and "related" proceedings (like the breach of contract action in *Marathon*) involving common law actions which are merely peripherally related to the adjudication of bankruptcy under federal law.

*United Security & Communications, Inc. v. Rite Aid Corp. (In re United Security & Communications, Inc.),* 93 B.R. 945, 954 (Bankr.S.D.Ohio 1988) (footnote omitted).

> (2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C.A. § 157(c) (West Supp.1989).

---

9. The complete text of § 157(c) of title 28 reads:

> (c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

10. *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

■ If a proceeding is neither core nor noncore "related," it is noncore and unrelated. Bankruptcy courts lack jurisdiction to determine "collateral disputes" between third parties which do not implicate the debtor or its property, i.e., proceedings which are noncore and unrelated. *Valentine v. Bank of Commerce (In re Southern Industrial Banking Corporation)*, 63 B.R. 331, 335 (Bankr.E.D.Tenn.1986); *Wisconsin v. Marine Bank (In the Matter of Kubly)*, 818 F.2d 643, 645 (7th Cir.1987) (" 'related to' jurisdiction encompasses only disputes that affect the payments to the bankrupt's other creditors or the administration of the bankrupt's estate.").

Plaintiff's claims against the Bank allege fraud, breach of contract, negligence, misrepresentation and breach of fiduciary duties by one who is not a debtor in bankruptcy against another who likewise is not a debtor in bankruptcy. These claims clearly do not give rise to a core proceeding. The alleged wrongdoings of the Bank cannot be said to "arise under" or "arise in" a case under title 11. The seven counts against the Bank neither embody a cause of action created under the Bankruptcy Code nor do they fall within the ambit of an administrative matter under title 11. *Woods*, 825 F.2d 90. Plaintiff's claims against the Bank are "stated-created private rights" which are not "at the core of the federal bankruptcy power." *Marathon*, 458 U.S. at 71, 102 S.Ct. at 2871.

### IV

■ The fundamental issue before this court concerns not whether Plaintiff's claim against the Bank is a core proceeding but whether it rises to the level of a noncore "related" proceeding. If the Plaintiff's causes of action against the Bank are noncore unrelated, this court lacks jurisdiction to hear and determine those claims. *Matter of Kubly*, 818 F.2d 643.

The yardstick by which a proceeding is measured as "related" or unrelated has been defined by the Sixth Circuit in *Kelley v. Nodine (In re Salem)*, 783 F.2d 626 (1986). In *In re Salem*, the Attorney General of the State of Michigan filed an adversary proceeding against the debtors and eight other defendants seeking equitable, legal and declaratory relief under state law. 783 F.2d at 629. The district court, upon reviewing the proposed final consent judgment submitted by the bankruptcy court in accordance with the Interim Rules promulgated subsequent to *Marathon*, concluded that it lacked subject matter jurisdiction over the proceeding pursuant to 28 U.S.C.A. § 1471(b) (West 1979) (*repealed*, Pub.L. No. 98–353, title I, July 10, 1984, 98 Stat. 343). 783 F.2d at 631.

In its review of the scope of bankruptcy court jurisdiction, the Sixth Circuit stated:

> The emphatic terms in which the jurisdictional grant is described in the legislative history, and the extraordinarily broad wording of the grant itself, leave us with no doubt that Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases.
>
> Courts have developed different tests in determining whether subject matter jurisdiction exists in a proceeding claimed to be "related to" a particular bankruptcy case. Some courts would find jurisdiction "only where the action clearly involved property of the estate ... or where a determination of the controversy is required for the proper administration or reorganization of the estate...." Another test finds jurisdiction "whenever 'the outcome of the proceeding could conceivably have *any effect upon the estate* being administered in bankruptcy.' " Although situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement, we believe that a broader interpretation of the statute more closely reflects the congressional intent in adopting the new bankruptcy laws.

783 F.2d at 633–634 (emphasis in original; citations omitted).

The Sixth Circuit found the proceeding in *In re Salem* to be related to the debtors' bankruptcy case, thus permitting the district court to exercise jurisdiction over the final consent judgment. 783 F.2d at 634.

The court based its conclusion upon a number of factors, including:

1. the plaintiff classes were to release the debtor from substantially all claims flowing from the transactions in question;

2. resolution of the dispute affected the debtors' liability to the investors;

3. resolution of the adversary proceeding could entitle the investors to bring suit against the debtors for breach of contract; and

4. the parties to the litigation were "intertwined." [Citing and distinguishing *Pacor Inc. v. Higgins,* 743 F.2d 984 (3rd Cir. 1984).] [11]

*In re Salem,* 783 F.2d at 634–635.

In *In re Salem,* it was clear that the consent judgment tendered the district court would impact upon the administration of the estate and affect the amount of and distribution of estate assets.

In *In re Michigan Real Estate Insurance Trust,* 87 B.R. 447, the debtor acted as a health insurer for its members. The Plaintiff, on behalf of the estate of two deceased individuals, sued the debtor, the debtor's trustees, the debtor's plan administrator, and the debtor's reinsurer. The Plaintiff sought the release of funds given by the reinsurer to the debtor which the Plaintiff asserted were owed to the decedents' estates. In four counts of the complaint, the Plaintiff sought a money judgment against the trustees, the reinsurer, and the plan administrator alleging fraudulent and innocent misrepresentations, breach of fiduciary duty, violation of the RICO statute and negligence. *Id.* at 450. The court noted:

> [T]hese counts assert demands for money judgments based entirely on legal theories outside the parameters of the Bankruptcy Code. Because the estate is not even a party to these counts, the real question here is whether federal jurisdic-

tion under the bankruptcy font, 28 U.S.C. § 1334, exists at all.

87 B.R. at 453 (footnote omitted).

The court in *In re Michigan Real Estate Insurance Trust* found the proceeding to be related because of two factors noted by the Sixth Circuit in *In re Salem*—the effect the adversary proceeding could have upon the bankruptcy estate and the intertwining of the parties. The court stated:

> Although the complaint does not assert liability against the bankruptcy estate on grounds of RICO, negligence or misrepresentation, it is obvious that the named defendants' conduct is inextricably intertwined with the debtor.... The RICO count alleges a conspiracy between the debtor by and through its former trustees and [reinsurer] to defraud the plaintiff.... As the parties' only relationship with one another radiates from the debtor, the actions of the debtor are central in the determination of this cause of action. The negligence and misrepresentation theories also allege actions and omissions which arise from the parties' interrelationships with the debtor. The debtor, in essence, formed a conduit connecting up the [parties].... [R]emove the debtor from the picture, and "juice" would not flow from the defendants to the plaintiff.

87 B.R. at 454–455.

The court also found that the estate could potentially benefit from the Plaintiff's action even though the recovery would facially accrue only to the Plaintiff, and not to the estate. 87 B.R. at 456. Judge Spector noted that if the Plaintiff successfully pursued its action, eventually satisfying its judgment against the non-debtor defendants, those defendants would then be subrogated to the Plaintiff's claim against the estate. Upon this basis, the court found that "there may indeed be some conceivable effect upon the bankrupt-

---

11. As jurisdiction in *In re Salem* could be premised solely on the basis that the proposed settlement allowed specified claims against the estate, a discussion of the degree to which the parties were "intertwined" was arguably not necessary to the Sixth Circuit's finding that jurisdiction existed. *See In re Michigan Real Estate Insur-* *ance Trust,* 87 B.R. at 455 (Bankr.E.D.Mich. 1988). However, *In re Salem* does not stand for the proposition that the degree to which the parties are intertwined cannot be a basis upon which a proceeding can be determined to be a "related" proceeding.

cy estate from the determination of these counts...." 87 B.R. at 456.

The court in *Michigan Real Estate Insurance Trust* set forth an astute and broad statement of the analysis to apply when determining whether or not an adversary proceeding is related:

> [I]f the bankruptcy estate could suffer any conceivable benefit or detriment as a result of the determination of the adversary proceeding, then bankruptcy jurisdiction exists. The benefit can take the form of disallowance of claims against the estate or the actual recovery of assets; the detriment can take the form of either the allowance of claims against the estate or the potential loss of assets due to any number of theories....

87 B.R. at 458, relying, inter alia, on *In re Salem*, 783 F.2d 626.

Judge William H. Brown, speaking in *Weeks v. Kramer (In re Weeks Security)*, 89 B.R. 697 (Bankr.W.D.Tenn.1988), stated:

> If the outcome will have an effect on the estate being administered, it is at least related, if not core.

89 B.R. at 708 (citations omitted).[12]

## V

Counts I through III and Counts V and VI of Haden's complaint clearly allege some form of joint conduct or intertwined behavior between the Bank and the debtor. In Count I, Plaintiff avers that the Bank and the debtor concealed an improper release of collateral by the Bank to the debtor. In the second count, Plaintiff avers (1) the debtor and the Bank jointly conspired to sell collateral given by "the Companies" as security for the Bank's loans and (2) that the debtor and the Bank divided the proceeds between themselves to Plaintiff's detriment. In Count III, Plaintiff avers that through a series of transactions involving the Bank, a Bank owned corporation, a debtor owned corporation and

Ridgefields, Inc., one of the "Children's Companies," Ridgefields, Inc. was improperly deprived of valuable real estate. In the fifth count, Plaintiff avers that the Bank allowed the debtor to improperly transfer collateral pledged by one of the "Children's Companies" to another corporation whose majority owner was the debtor. The sixth count contains similar allegations of joint misconduct by the Bank and debtor in transferring property of one of the "Children's Companies" to a debtor owned corporation.

Counts I, II, III, V, and VI of the complaint present a number of transactions participated in part by both the Bank and the debtor, in which both allegedly acted improperly and in concert.

In Count VII, entitled "General Dealings," Plaintiff alleges that the Bank's actions "demonstrate[ ] a pattern" of conduct in disregard of "the Companies[']" interests. No joint conduct is specifically averred in Count VII although the Plaintiff does "aver[ ] that she is entitled to a complete accounting ..." of the Bank's transactions with various relevant entities including the debtor and his corporations. Count VII incorporates by reference the previous six counts where joint and intertwined conduct are alleged. Count VII also recapitulates in general, the specifics contained in the first six counts. As such, joint conduct is alleged in Count VII. On the basis of joint or intertwined conduct, Counts I through III and V through VII are related to the bankruptcy case.

Count IV, on the other hand, contains no specific allegations evincing joint or intertwined conduct between the Bank and debtor. It does, however, incorporate by reference all prior allegations set forth in the complaint. While Plaintiff does not allege joint or intertwined conduct by the Bank and debtor, these averments are a part of Plaintiff's overall theories of recovery un-

---

**12.** Outside the Sixth Circuit, the operative test similar to that enunciated by the *In re Salem* court often is to determine " 'whether the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy.' " *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir.1987) (emphasis in original),

citing *Pacor v. Higgins (In re Pacor)*, 743 F.2d 984, 994 (3rd Cir.1984); *Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.)*, 810 F.2d 782 (8th Cir.1987); *Bobroff v. Continental Bank (In re Bobroff)*, 766 F.2d 797 (3rd Cir.1985); *Turner v. Ermiger (In re Turner)*, 724 F.2d 338 (2nd Cir.1983).

der all seven counts in her complaint. The court, therefore, concludes that Count IV is also related to the bankruptcy case.

An additional basis for determining Plaintiff's claims against the Bank to constitute a related proceeding is the impact a judgment in Plaintiff's favor could have upon the estate. Should the Bank be found liable to Haden for damages, the bankruptcy estate could be liable to the Bank in whole or in part for the monies paid by the Bank. *See In re Salem,* 783 F.2d 626; *In re Michigan Real Estate Insurance Trust,* 87 B.R. 447. Therefore, Counts I through VII are also related to the bankruptcy case because of the impact a judgment against the Bank could have upon the bankruptcy estate.

### VI

For the reasons stated above, the court has determined that jurisdiction of Plaintiff's claims against the Bank as set forth in Counts I through VII of her complaint is cognizable in the bankruptcy court. The court reiterates that its determination that it has jurisdiction to hear Plaintiff's claims against the Bank in no way resolves the questions, procedural and otherwise, arising from Plaintiff's demand for a jury trial. Those issues will perhaps be resolved another day.

Defendant's Motion will be denied. An appropriate order will be entered.