**Bondary McCALL, Plaintiff,**

v.

**UNITED STATES MARSHALS SERVICE, Defendant.**

No. Civ.A. 97–0768–LFO.

United States District Court, District of Columbia.

Feb. 3, 1999.

**4**

Aretha J. Ector, Owens & Robertson, P.A., Baltimore, MD, for plaintiff.

Bondary McCall, Jesup Federal Correctional Institution, Jesup, GA, plaintiff pro se.

David T. Smorodin, U.S. Attorney's Office, Washington, DC, for U.S. Marshals Service, federal·defendant.

*MEMORANDUM*

OBERDORFER, District Judge.

The parties agree that the material facts in this case are as follows. On February 25, 1997, the plaintiff sent a request for information to the General Counsel of the United States Marshals Service, *see* 28 U.S.C. §§ 561–569, which was received on March 6, 1997. The plaintiff wanted to know the names of two deputy marshals who had transported the plaintiff from the third floor to the fourth floor of the United States Courthouse in Columbus, Ohio, on March 15, 1994. According to the plaintiff, the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, entitled him to the information.

On March 24, 1997, the plaintiff, having failed to receive a response to his request "within ten working days," Compl. ¶ 6, submitted a complaint and an application to proceed *in forma pauperis,* which were received by this court on March 27, 1997. In an order filed April 17, 1997, this court "provisionally filed" the action, and indicated that before the court would "consider the application to proceed *in forma pauperis* and the complaint," the plaintiff would have to provide certain information to the court, *see* 28 U.S.C. § 1915(a). On April 23, 1997, the Marshall Service denied the plaintiff's FOIA request, citing FOIA exemption 7(C), *see* 5 U.S.C. § 552(b)(7)(C). The plaintiff did not appeal the denial within the Justice Department. Instead, the plaintiff provided the information required by the April 17 Order, and an order filed May 23, 1997, granted the plaintiff's motion to proceed *in forma pauperis.*

I

■ The government first argues that this suit should be dismissed because the plaintiff failed to exhaust his administrative remedies. When the agency fails to timely respond to a FOIA request, however, and the person making the request files a lawsuit before the agency does respond, the person "shall be deemed to have exhausted his administrative remedies with respect to such request." 5 U.S.C. § 552(a)(6)(C)(i); *see Oglesby v. U.S. Department of Army,* 920 F.2d 57, 63–64

(D.C.Cir.1990). Prior to October 2, 1997, an agency had ten days to respond to a FOIA request, not counting weekends and federal holidays. *See* 5 U.S.C. § 552(a)(6)(A)(i) (1994), *revised,* Pub.L. 104–231, § 8, effective Oct. 2, 1997. In unusual circumstances, the agency can extend the time period a little, but it must notify the person making the request of those circumstances and the extension. *See id.* at § 552(a)(6)(B) (1994), *revised,* Pub.L. 104–231, § 7, effective Oct. 2, 1997. The government does not suggest that it provided the plaintiff any notice of an extension.

■ In this case, the plaintiff *lodged* his complaint prior to the agency's response to his FOIA request; this court did not act on his application to proceed *in forma pauperis,* however, until after the agency responded. Under some circumstances, the complaint of a plaintiff who seeks to proceed *in forma pauperis* may not be considered "filed" until after the court acts on the motion to proceed *in forma pauperis. See, e.g., Sikora v. Hopkins,* 108 F.3d 978 (8th Cir.1997) (per curiam); *cf. Thurman v. Gramley,* 97 F.3d 185, 188–89 (7th Cir.1996). For example, the deadline for service of summons and complaint may be computed from the date the district court grants *in forma pauperis* status or, if the application is denied, from the date the plaintiff pays the docketing fee. *See Williams–Guice v. Board of Educ.,* 45 F.3d 161, 162 (7th Cir.1995). But at least for statute of limitations purposes, in the case where *in forma pauperis* status is subsequently *granted,* the general rule is that the complaint is considered to have been filed on the date it was lodged. *See Toliver v. County of Sullivan,* 841 F.2d 41, 42 (2d Cir.1988) (per curiam); *Gilardi v. Schroeder,* 833 F.2d 1226, 1233 (7th Cir.1987); *see also Mondy v. Secretary of the Army,* 845 F.2d 1051, 1058 n. 2 (D.C.Cir.1988) (MacKinnon, J., concurring).

■ A FOIA plaintiff's option to proceed to court without pursuing an (available) administrative appeal terminates when the agency responds before the plaintiff goes to court. For the purpose of determining whether the plaintiff's "suit [was] filed" before the defendant responded to the plain-

tiff's FOIA request, *see Oglesby,* 920 F.2d at 65, the filing date is the date the plaintiff lodged his complaint and application to proceed *in forma pauperis.* (At least when the plaintiff does not delay in providing the court with the information needed to act on the application and the application is granted.) Therefore, in this case filing occurred no later than April 17, 1997. The defendant did not respond until April 23.

■ This is not a case in which "the requester[, by] wait[ing] long past the ten-day deadline for the agency's response and then bring[ing] suit without an administrative appeal[,] has by his actions indicated that time cannot be of the essence." *Oglesby,* 920 F.2d at 65. Within days after the agency's deadline, this plaintiff did almost all he could have done. Although he might have speeded along his *in forma pauperis* application by providing the trust fund statement required by 28 U.S.C. § 1915(a)(2) at the time he lodged his complaint, that would not have insured that his application would be acted upon before the agency responded. So the rationale for forcing the requester to pursue an administrative appeal is inapplicable to this situation. Since the plaintiff "sought judicial review," *id.* at 64, before the defendant's response, he was not required to abandon his suit when the agency responded while his application to proceed *in forma pauperis* was pending. The language of this court's April 17, 1997 Order, stating that the complaint was "provisionally filed," leads to the same conclusion.

## II

■ FOIA exemption 7(C) applies to "records or information compiled for *law enforcement purposes,* but only to the extent that the production of such law enforcement records or information … (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7) (emphasis added). The government explains that the information the plaintiff seeks is compiled for law enforcement purposes:

Information such as the names of Deputy U.S. Marshall personnel assigned to trans-

port USMS prisoners, if maintained, is typically maintained in the Prisoner Processing and Population Management ... system of records. Records contained in this system are compiled for law enforcement purposes in connection with the USMS receipt, processing, safekeeping, and transportation of prisoners held in custody of a Marshal or transported by the USMS, and the maintenance of custody of federal prisoners held on federal criminal charges.

Decl. ¶ 8. The plaintiff does not contest this explanation. The plaintiff does not argue, for example, that keeping track of which deputy marshals escort particular prisoners is no more related to law enforcement than a law firm's keeping track of which employees interviewed a prospective employee. The plaintiff only argues that in order to fall within exemption 7(C), the information must be related to a "pending law enforcement *investigation.*" Mem. Opp'n 4 (emphasis added).

At one time exemption 7(C) did specify that it applied to "investigatory records compiled for law enforcement proceedings," 5 U.S.C. § 552(b)(7) (1982). In 1986, however, Congress "broadened the scope of the exemption 7 threshold by replacing 'investigatory records' with the more general term 'documents or information.'" *Keys v. U.S. Department of Justice,* 830 F.2d 337, 340 (D.C.Cir.1987). The government is not required to point to a pending investigation. A law enforcement agency such as the Marshals Service, *see* 28 U.S.C. § 566, need only establish that there is "a colorable claim of rationality" to the alleged connection between the collection of the information and law enforcement. *Id.* (internal quotation marks omitted). The defendant has met that standard in this case. *See* Decl. ¶ 8. Escorting federal prisoners within a federal courthouse is a law enforcement activity, so a basic record of that activity is directly connected with law enforcement. For example, a record of the names of deputy marshals and prisoners facilitates providing adequate staffing as well as investigating any incidents that may occur.

The next step in the analysis is to consider whether "the privacy interest at stake outweighs the public's interest in disclosure." *Nation Magazine v. U.S. Customs Service,* 71 F.3d 885, 893 (D.C.Cir.1995). This is a case in which "[t]he relevant public interest supporting disclosure ... is negligible, at best." *U.S. Department of Defense v. F.L.R.A.,* 510 U.S. 487, 497, 114 S.Ct. 1006, 1013, 127 L.Ed.2d 325 (1994). The plaintiff does not even attempt to identify the public interest in disclosure; the names were requested "in order to properly identify those persons allegedly responsible for Plaintiff's personal injuries." Mem. Opp'n 5. A particular plaintiff's personal need for the information neither enhances nor diminishes the case for disclosure. *See U.S. Department of Justice v. Reporters Committee,* 489 U.S. 749, 771, 109 S.Ct. 1468, 1480–81, 103 L.Ed.2d 774 (1989); *N.L.R.B. v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 n. 23, 98 S.Ct. 2311, 2327 n. 23, 57 L.Ed.2d 159 (1978). Because disclosure of the deputy marshals' *names* would shed little, if any, light on the Marshall Service's "performance of its statutory duties," the public interest in disclosure is insignificant. *See Dunkelberger v. Department of Justice,* 906 F.2d 779, 781–82 (D.C.Cir.1990).

Even assuming that the marshals' privacy interests in their names alone are not especially great—for example, it does not appear that disclosure of their identities would wrongly link them to notorious activities, *see Stern v. F.B.I.,* 737 F.2d 84, 93 (D.C.Cir. 1984)—their privacy interests are not insignificant. *See New England Apple Council v. Donovan,* 725 F.2d 139, 142–44 (1st Cir. 1984); *cf. U.S. Department of Defense v. F.L.R.A.,* 510 U.S. at 500–502, 114 S.Ct. at 1015–16 (home address). The plaintiff does not dispute the government's assertion that "public identification of these law enforcement officers *could* subject them to unwarranted scrutiny, harassment, and annoyance, both in the course of performing their official duties and in their private lives." Decl. ¶ 9 (emphasis added); it is irrelevant whether the *plaintiff* intends to harass or annoy. Even a modest privacy interest outweighs an insignificant public interest in disclosure, particularly in the case of exemption 7(C),

which merely asks whether disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *See Davis v. U.S. Department of Justice,* 968 F.2d 1276, 1281–82 (D.C.Cir.1992); *Dunkelberger,* 906 F.2d at 782. The plaintiff speculates that the information he seeks is already in the public domain, but while proof might overcome the exemption, speculation does not. *See Davis,* 968 F.2d at 1280; *cf. U.S. Department of Defense v. F.L.R.A.,* 510 U.S. at 500, 114 S.Ct. at 1015. Therefore, an order accompanying this Memorandum dismisses the complaint on the merits.

### ORDER

ORDERED: that the defendant's motion for summary judgment shall be GRANTED; and it is further

ORDERED: that this case shall be DISMISSED on the merits.