Essie J. BAKER, Plaintiff,

v.

William J. HENDERSON, Postmaster General, United States Postal Service, Defendant.

No. Civ.A. 00–0786(RMU).

United States District Court, District of Columbia.

March 30, 2001.

Essie J. Baker, Capitol Height, MD, Pro se.

Laurie Weinstein, Assistant United States Attorney, Washington, DC, for Defendant.

*MEMORANDUM OPINION*

URBINA, District Judge.

DENYING WITH PREJUDICE THE DEFENDANT'S MOTION TO DISMISS; DENYING WITHOUT PREJUDICE THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the court on the defendant's motion to dismiss or, in the alternative, for summary judgment. On September 15, 1999, the Equal Employment Opportunity Commission ("EEOC") issued its final decision dismissing the plaintiff's claims of discrimination and retaliation. The plaintiff, Essie J. Baker, now brings this action pursuant to the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 *et seq.* The defendant, William J. Henderson, named in his official capacity as Postmaster General of the United States Postal Service ("the defendant" or "Postal Service") moves to dismiss the case on the ground that the plaintiff did not timely file her complaint. · In the alternative, the defendant moves for summary judgment.

After careful consideration of the complaint and the parties' submissions, the court finds that, despite the plaintiff's diligence, she was unable to meet the statutory deadline imposed by 42 U.S.C. § 2000e–16(c) because of a mix-up by the court clerk's office. Therefore, the court determines that equitable tolling is appropriate, and the court will exercise its equitable powers to toll the 90–day filing period so this action may proceed. Accordingly, the court will deny with prejudice the defendant's 12(b)(6) motion. In addition, the court will deny without prejudice the defendant's motion for summary judgment. The defendant may renew its summary-judgment motion at a later date.

## II. BACKGROUND

### A. Procedural History

On September 20, 1996, the plaintiff signed a contract with her employer, the United States Postal Service, entitled "Rehabilitation Job Offer." *See* Compl. at 1. That document reflected the position of "Modified Carrier" at the time the plaintiff signed it. *See id.* Thereafter, while the plaintiff was recuperating from an on-the-job injury, she requested a copy of the document from her employer. *See id.* At that time, the plaintiff became aware that the contract had been tampered with, and her job title had been "white-ed out." *See id.* The contract, as modified, reflected a new job title, "Part Time Flexible Employee" ("PTF"). *See id.* According to the plaintiff, the change from "modified carrier" to "PTF" amounted to a demotion that negatively affected her career status, leave benefits, holidays, bid assignment and bidding rights. *See id.*

These events prompted the plaintiff to file a complaint with the EEOC on March 12, 1997. The plaintiff's EEOC complaint alleged discrimination based on her disability (bad back and wrist) as well as retaliation for her prior EEOC activity. According to the final agency decision, an administrative judge issued findings and conclusions without a hearing on June 21, 1999, ultimately dismissing the case. *See* Compl. at 3. On September 15, 1999, the United States Postal Service mailed a copy of this final agency decision to the plaintiff, and included a notice of right to file a civil action (a "right-to-sue" letter). *See id.*

The plaintiff then filed this action on April 11, 2000.

■ The defendant moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6) on the ground that the plaintiff failed to timely file her complaint in the United States District Court. *See* Mot. to Dis. at 1. The plaintiff counters that she lodged her request to proceed *in forma pauperis* ("IFP") within the filing deadline, but that various mishaps in the clerk's office prevented a timely filing. *See* Pl.'s Opp'n at 1–2. The defendant concedes that the lodging of a request to proceed IFP tolls the limitations period until the court rules on the plaintiff's request. *See* Reply at 3; *see also Mondy v. Secretary of the Army*, 845 F.2d 1051, 1057 (D.C.Cir.1988). According to the defendant's calculations, however, the plaintiff either officially lodged her request for IFP too late (i.e., on January 4, 2000) or neglected to file the complaint within the time remaining after her request for IFP was denied. *See id.* The plaintiff maintains that she lodged her request for IFP within the limitations period but that the clerk lost her file twice and neglected to notify her when the court denied leave to proceed IFP. She claims that the clerk's mistakes led to the late filing of the complaint. *See* Pl.'s Opp'n at 1.

■ Since the plaintiff and defendant do not agree about the date on which the plaintiff lodged her IFP request, the court will take judicial notice of the clerk's "Pro Se Log Report" to help determine the key date.[1]

---

1. In determining whether a complaint fails to state a claim, the court may consider facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice. *See E.E.O.C. v. St. Francis Xavier Parochial School,* 117 F.3d 621, 625 (D.C.Cir.1997). Thus, the court may take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment. *See Marshall County Health Care Auth. v. Shalala,* 988 F.2d 1221, 1226 (D.C.Cir.1993); *Phillips v. Bureau of Prisons,* 591 F.2d 966, 969 (D.C.Cir.1979)

## B. Timeline of Relevant Events

On September 15, 1999, the EEOC issued its final agency decision in this case and mailed a notice to the plaintiff. *See* Compl. at 3. On December 10, 1999, the plaintiff lodged her IFP request with the clerk of this court. *See Pro Se* Log Report. On January 4, 2000, the plaintiff went to the clerk's office to ask about her IFP application and discovered that the clerk had misplaced the file. *See* Pl.'s Opp'n at 1.[2] On March 7, 2000, the court denied the plaintiff's request to proceed IFP. For some reason, however, the court clerk's office did not send notice of the denial to the plaintiff. *See id.* at 2. On April 4, 2000, the plaintiff again went to the United States Courthouse and asked about the status of her IFP request. *See* Pl.'s Opp'n at 2. At that time, the clerk's office found the file, which reflected that the court had denied her IFP request on March 7, 2000. *See id.* On April 11, 2000, the plaintiff paid the filing fee and initiated this action.

## III. DISCUSSION

### A. Legal Standard for 12(b)(6) Motion to Dismiss

In ruling on a 12(b)(6) motion to dismiss, the court is bound to accept as true all well-pleaded allegations of fact, excluding those that are overbroad and unsupported by specific factual averments. *See Pitney Bowes v. United States Postal Service*, 27 F.Supp.2d 15, 19 (D.D.C.1998) (Urbina, J.); *Judicial Watch, Inc. v. Clinton*, 880 F.Supp. 1, 7 (D.D.C.1995). Moreover, all reasonable inferences from those factual allegations are to be drawn in the nonmovant's favor. *See Judicial Watch*, 880 F.Supp. at 7.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is not designed to test whether the plaintiff will prevail on the merits. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As this Circuit has held, the complaint must not be dismissed unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Chandler v. D.C. Dep't of Corrections*, 145 F.3d 1355, 1360 (D.C.Cir.1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### B. Analysis

#### 1. Time-filing Requirements

The EEOC mailed its decision to the plaintiff on September 15, 1999. There is a presumption that the plaintiff received the letter three days later, i.e., on September 18, 1999.[3] The applicable statutory deadlines for Title VII cases are laid out in 42 U.S.C. § 2000e–16(c), which provides that "[w]ithin 90 days of receipt of notice of final action taken by a department, agency . . . an employee . . . may file a civil action." 42 U.S.C. § 2000e–16(c). In this case, the 90–day limitation period be-

---

(court may consider items in the record of the case or of a general public nature).

2. Although the plaintiff titled her opposition to the defendant's motion to dismiss as a "Reply," the court will refer to it as her opposition.

3. The complaint need not state the date on which the plaintiff received the right-to-sue letter. *See Smith–Haynie v. District of Columbia*, 155 F.3d 575, 577 (D.C.Cir.1998). In the absence of a date, there is a presumption that the letter was received three days after it was mailed. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n. 1, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (applying Fed. R.Civ.P. 6(e) to Title VII cases).

gan running on September 18, 1999. That would have given the plaintiff until December 17, 1999 (90 calendar days later) to file her suit in this court. The plaintiff lodged her IFP request on December 10, 1999 (seven days before the limitations period ran), which had the effect of tolling the limitations period until the court denied her IFP request on March 7, 2000. The plaintiff did, therefore, lodge her IFP request within the limitations period.

The court turns next to the question of whether the plaintiff filed the complaint within the time remaining (i.e., seven days) after the court denied her IFP request. The defendant correctly notes that the limitations period resumes running once the court denies the IFP request. *See Williams–Guice v. Board of Ed.*, 45 F.3d 161, 162 (7th Cir.1995); *McCall v. United States Marshals Service*, 36 F.Supp.2d 3, 5 (D.D.C.1999). In this case, the plaintiff had seven days remaining from March 7, 2000. To preserve her claim, the plaintiff had to pay the filing fee and file her complaint on or before March 14, 2000. Unfortunately, the plaintiff states that she did not receive notice of her IFP denial from the clerk's office until April 4, 2000, well after the deadline to file suit. *See* Pl.'s Reply at 2.

Crucially, however, once the plaintiff actually learned of the IFP denial, she acted swiftly to file her complaint. Indeed, she filed it within seven days, i.e., on April 11, 2000, from the day she learned the court had denied her IFP request. Accordingly, the court finds that the plaintiff acted diligently to preserve her claim. The court now considers the plaintiff's request to toll the limitations period.

### 2. Equitable Tolling

#### a. Legal Standard

■ The Supreme Court has held that late-filed civil actions are not jurisdictionally barred, but are subject to equitable-tolling principles. *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Before *Irwin*, there had been confusion as to whether the doctrine of equitable tolling applied to suits against the government because of sovereign-immunity considerations. The *Irwin* Court, though, held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id.* at 95–96, 111 S.Ct. 453.

■ Equitable tolling, however, is allowable only in narrowly tailored circumstances. *See id.* at 96, 111 S.Ct. 453. The D.C. Circuit has held that a district court's power to toll the statute of limitations should "be exercised only in extraordinary and carefully circumscribed instances." *See Mondy*, 845 F.2d at 1057. Thus, the plaintiff will not be afforded extra time to file without exercising due diligence, and the plaintiff's excuse must be more than a "garden variety claim of excusable neglect." *See Irwin*, 498 U.S. at 96, 111 S.Ct. 453. Indeed, the Supreme Court has emphasized that when applying equitable tolling to Title VII actions subject to 42 U.S.C. § 2000e–5(f), district courts should not invoke the doctrine in cases where the plaintiff has failed to act diligently to preserve her claim. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). This is particularly true when the plaintiffs have been "unambiguous[ly] notified that they must sue within ninety days of the EEOC's dismissal of the charge." *See Smith–Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C.Cir.1998). Finally, the plaintiff has the burden of pleading and proving the existence of equitable reasons for her failure to meet the time limit for filing suit in the district court. *See*

*Saltz v. Lehman,* 672 F.2d 207, 209 (D.C.Cir.1982).

In this case, the court notes that the plaintiff's claim of discrimination is based on her disability. This means the ADA, rather than Title VII, authorizes her action. The equitable tolling analysis is identical for these claims since both are "adjudicated using the powers, remedies and procedures of Title VII of the Civil Rights Act." *See* 1998 WL 175031, 144 A.L.R.Fed. 307 (1998). Moreover, based on the Supreme Court's reasoning in *Zipes v. Trans World Airlines,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the D.C. Circuit has held that the timeliness of filing suit under the ADA is a statutory condition precedent to litigation (not jurisdictional in nature) and is, therefore, subject to waiver, estoppel, and equitable tolling. *See Kennedy v. Whitehurst,* 690 F.2d 951, 961 (D.C.Cir.1982).

■ In *Mondy,* the D.C. Circuit listed the rare circumstances that can warrant the use of the court's equitable tolling powers:

> [When] a claimant has received inadequate notice, ... where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, ... where the court has led the plaintiff to believe that she had done everything required of her, ... [or] where affirmative misconduct on the part of the defendant lulled the plaintiff into inaction.

*Mondy,* 845 F.2d at 1056 (citations omitted). In *Mondy,* the court found equitable tolling appropriate where the plaintiff failed to meet the deadline set by 42 U.S.C. § 2000e–16(c) because she relied on the United States Marshal's Service for service of process and the Marshal's Service did not timely effect service. *See id.* at 1057. Other appropriate applications of equitable tolling include situations when a plaintiff has received inadequate notice from the EEOC or has been "misled" by the district court or has been "lulled ... into inaction" by the defendant. *See Dougherty v. Barry,* 869 F.2d 605, 613 (D.C.Cir.1989) (citations omitted).

### b. Application of the Equitable–Tolling Doctrine

■ In Ms. Baker's opposition, she asserts that the clerk twice lost her IFP request and then failed to notify her when the court denied her request. *See* Pl.'s Opp'n at 1; Pl.'s Reply at 2. The court holds that this case is precisely one of the rare cases in which the court should apply the doctrine of equitable tolling. This *pro se* plaintiff was clearly diligent. First, she lodged her IFP request within the limitations period. Second, three weeks later, she went to the court clerk's office to check on the status of her IFP request only to learn that the clerk's office had misplaced her petition. Third, she did not discover that the court had denied her IFP request until she took the initiative to make a second visit to the clerk's office on April 4, 2000. On that day, the clerk's office, spurred by the plaintiff's request, located her file and told her the court had denied her IFP petition on March 7, 2000. Finally, the plaintiff filed her complaint on April 11, 2000, within seven days of learning about the denial of her IFP petition. Accepting the plaintiff's facts as true for the purposes of this motion, the court finds that the plaintiff was very diligent in pressing her action.

In addition, the court clerk's office made a mistake in misplacing the paperwork and failing to later send notice of the IFP denial. The D.C. Circuit has envisioned this situation—where the court provides the plaintiff with inadequate notice—as one where tolling should apply. *See Mondy,* 845 F.2d at 1056. The lack of suffi-

cient notice is particularly unfortunate in this case since the plaintiff is not represented by counsel. *See* Zipes, 455 U.S. at 395, 102 S.Ct. 1127 (1982) (strict adherence to a statutory scheme is "particularly inappropriate" when a plaintiff initiates an action without legal representation). For all these reasons, the court will use its equitable powers to toll the limitation period, rendering the complaint timely. Accordingly, the court denies the defendant's motion to dismiss.

### 3. The Defendant's Alternative Motion for Summary Judgment

■ As an alternative to dismissal, the defendant moves for summary judgment. *See* Def.'s Mot. at 1. The court denies this motion as premature. The plaintiff has not yet been afforded the appropriate time for discovery or procedural notice to respond to a motion for summary judgment. The defendant in this case makes much of the fact that the plaintiff has not provided a statement of material facts in dispute to rebut his summary-judgment motion. *See* Def.'s Reply at 4. According to the defendant, the court should then assume the defendant's statement of "no material facts in dispute" has been admitted. *See id.* The D.C. Circuit, however, has instructed the district courts to specifically notify *pro se* plaintiffs of the necessity to prepare affidavits attesting to the facts in dispute on summary judgment. *See Neal v. Kelly,* 963 F.2d 453, 456 (D.C.Cir.1992); *Ham v. Smith,* 653 F.2d 628, 630 (D.C.Cir.1981) (district courts should defer ruling on summary-judgment motions until they are certain that the *pro se* plaintiff understands

the consequences of failing to respond to a Rule 56 motion).

Given the dual purpose of the defendant's motion and the fact that this court has construed it as a motion to dismiss, the *pro se* plaintiff has not yet been notified of the necessity to file affidavits in response to a motion for summary judgment.[4] Furthermore, the court notes that discovery has not been scheduled or initiated in this case. Thus, at this point, the court denies without prejudice the defendant's motion for summary judgment. The defendant, of course, is free to renew its summary-judgment motion at a later time, preferably at the close of discovery.

## IV. CONCLUSION

For all of these reasons, the court denies with prejudice the defendant's motion to dismiss and denies without prejudice the defendant's alternative motion for summary judgment. An Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously issued this 30 day of March, 2001.

## *ORDER*

### DENYING WITH PREJUDICE THE DEFENDANT'S MOTION TO DISMISS; DENYING WITHOUT PREJUDICE THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

For the reasons stated in the court's Memorandum Opinion issued separately and contemporaneously this 30 day of March, 2001, it is

---

4. The plaintiff is now on notice that a future motion for summary judgment by the defendant requires her to respond by submitting to the court an affidavit setting forth specific facts that are in dispute. If the plaintiff does not so respond, or is unable to demonstrate by affidavit or sworn statement that factual issues remain to be resolved, summary judgment, if appropriate, will be entered against the plaintiff. *See* FED.R.CIV.P. 56(e). In addition, the court will issue simultaneously with this Memorandum Opinion and Order a *Fox–Neal* order, which will inform the plaintiff more specifically about what she needs to provide to the court if the defendant moves for summary judgment.

**ORDERED** that the defendant's motion to dismiss is hereby **DENIED;** and it is

**FURTHER ORDERED** that the defendant's motion for summary judgment is hereby **DENIED WITHOUT PREJU-DICE;** and it is

**ORDERED** that an initial status hearing is hereby set for **Monday, May 21, 2001 at 1:30 p.m.**