Hassan ABBEY & Yussur
Abrar, Plaintiffs,

v.

MODERN AFRICA ONE, LLC,
et al., Defendants.

No. CIV.A. 03–259(ESH).

United States District Court,
District of Columbia.

Feb. 18, 2004.

Donald M. Temple, Jared Kenric Ellison, Temple Law Offices, Washington, DC, for Plaintiffs.

John Jay Range, Peter John Loughlin, Hunton & Williams, Washington, DC, for Defendants.

Lydia Kay Griggsby, U.S. Attorney's Office, Washington, DC, for Movant.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiffs Hassan Abbey and Yussur Abrar bring this action against Defendants Modern Africa One, LLC ("Modern Africa"), Stephen Cashin, and Niles Helmboldt to recover compensatory and punitive damages, attorneys' fees and costs, and injunctive relief in connection with defendants' actions as majority shareholders of Warsun International Communications, Inc. ("Warsun") and for their alleged interference with plaintiffs' ownership interest in Warsun's Nigerian subsidiary.[1] Warsun has filed for Chapter 11 bankruptcy and is currently in Chapter 7 liquidation proceedings before the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division ("Bankruptcy Court"). Defendants have moved pursuant to 18 U.S.C. § 1404(a) and 28 U.S.C. § 1412 to transfer venue of this matter to that court, or alternatively, to dismiss this action on the basis that plaintiffs have failed to state

---

1. On January 7, 2004, this Court granted plaintiffs' Motion to Dismiss DiscoveryTel, Inc. as a defendant in this action.

a claim as to Count VI, and as to the remaining claims, they are barred by the doctrines of collateral estoppel, waiver and the Bankruptcy Court's entry of a preliminary injunction and its approval of the sale of Warsun assets to Modern Africa. Having considered the pleadings and relevant law, the Court will deny the motion to transfer; grant the motion to dismiss Counts III, VI and those claims that do not properly belong to plaintiffs as opposed to the corporate entities; deny the motion to dismiss Counts I, II, IV, V, and VII; and stay these proceedings pending resolution of the adversary proceeding which is currently pending in the Bankruptcy Court.

## BACKGROUND

### I. The Parties

The parties to this action include individuals and companies associated with Warsun, a New York corporation that provided facilities-based telecommunications services in Africa. Warsun filed for Chapter 11 bankruptcy on August 13, 2002, and is currently in Chapter 7 liquidation proceedings. Plaintiffs Hassan Abbey and Yussur Abrar hold a minority interest in Warsun, and they served as officers and directors of Warsun until the summer of 2002.

Modern Africa, an investment fund of Modern Africa Growth and Investment Company (the "Fund"), was established to make equity investments in Africa, particularly in manufacturing and communications enterprises. Modern Africa invested $6,000,000 in Warsun in the form of a secured loan in 1999 and another $4,000,000 over the next three years. (Nyirjesy Decl. ¶ 3.) In return, Modern Africa received one share of Warsun stock and warrants to obtain 700,000 additional shares, the equivalent of a 70% equity stake. (*Id.*) Modern Africa currently owns 985,714 shares of Warsun stock. (Defs.'

Ex. 10 [Pls.' Objection to Mot. to Sell Assets] ¶ 44.) Defendants Stephen Cashin and Niles Helmboldt are members of Modern Africa Fund Managers, LLC, a limited liability company that managed and administered the Fund. Cashin served as a member of the board of Warsun and managing director of Modern Africa. Helmboldt served as chairman of the boards of both Warsun and Modern Africa.

Warsun Network Solutions, Ltd. ("Warsun Nigeria") is a Warsun subsidiary. It was established in August 2000 in Nigeria, the largest telecommunications market in Africa, to obtain telecommunications licenses and to establish a system of software and equipment that would enable Warsun's African affiliates to deliver and receive communications from local Internet Service Providers ("ISPs") and telecommunications carriers. (Am. Compl.¶¶ 75, 77.) Ownership of Warsun Nigeria is in dispute. Plaintiffs (along with Chidi Ibisi who is not a party to this action) claim an ownership interest in Warsun Nigeria (*id.* ¶ 81), while defendants maintain that 100% of Warsun Nigeria's shares belonged to Warsun. (Defs.' Mot. at 7 n. 2.) This dispute is at the heart of an adversary proceeding now pending before the Bankruptcy Court.

### II. Bankruptcy Proceedings

Despite Modern Africa's investments, by mid-2002 Warsun, like much of the telecommunications industry, was in financial difficulty. It was at this time that Warsun's board terminated plaintiffs as officers, and plaintiffs resigned as directors of the company. Thereafter, its board determined that bankruptcy was the only viable alternative for survival of the company, and on August 13, 2002, Warsun filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

Shortly thereafter, Warsun entered into an asset purchase agreement ("APA") to sell all of the company's assets to Modern Africa as part of the bankruptcy proceeding. On December 16, 2002, plaintiffs objected to this sale, claiming that Warsun and Modern Africa were acting in bad faith and requesting that the Bankruptcy Court prohibit the sale and subordinate Modern Africa's debt investment to the interests of Warsun's other creditors. (Defs.' Ex. 10 [Pls.' Objection to Mot. to Sell Assets].) The Bankruptcy Court conducted a hearing, and over plaintiffs' objections, it approved the sale on December 20, 2002, and it barred, pursuant to § 363 of the Bankruptcy Code, any claims relating to those assets that arose prior to the closing of the sale. (Defs.' Ex. 11 ["363 Order"] at 2".) Listed among the assets sold in this transaction were 6 million shares of common stock of Warsun Nigeria, "representing all of the shares of common stock held by [Warsun] in such entity" (Defs.' Ex. 1 [Asset Purchase Agreement Schedule 1.4]), except apparently it was stipulated that "the assets and shares of Warsun Nigeria would be sold subject to the parties' dispute, and that Modern Africa could not acquire such assets to the extent that it is later determined by a Nigerian court that Warsun is not entitled to such assets." (Pls.' Opp. at 18.)[2] Modern Africa later assigned all of the assets it purchased to DiscoveryTel in return for a substantial equity stake in that company.

In a related matter, an adversary proceeding against Abrar and Abbey is currently pending in the Bankruptcy Court.[3] In that action, initiated on September 11, 2002, Warsun alleges that plaintiffs (1) violated the automatic stay by pursuing litigation in Nigeria in violation of the automatic stay; (2) conspired to injure Warsun in its trade, reputation, and business in violation of Virginia's business conspiracy statute; and (3) breached the fiduciary duties they owed to Warsun as officers and directors by surreptitiously and improperly obtaining personal ownership interests in Warsun Nigeria. (Defs.' Ex. 3 [Adversary Proceeding Compl.] ¶¶ 22–29.)[4] Because Warsun sold all of its assets, including its interest in Warsun Nigeria, to Modern Africa after initiating the adversary proceeding, and because Modern Africa in turn assigned the assets to DiscoveryTel, on January 6, 2004 the Bankruptcy Court granted a motion to substitute DiscoveryTel as plaintiff in the adversary proceeding. In its Order issued on January 6, 2004, the Bankruptcy Court also set a pretrial conference for February 23, 2004 in the adversary proceeding. The crux of that matter relates to the ownership of Warsun Nigeria, *i.e.*, whether DiscoveryTel or plaintiffs own the stock of Warsun Nigeria.[5]

Shortly after the adversary proceeding was initiated, plaintiffs filed suit in a Ni-

---

**2.** The precise contours of the stipulation are not known. In support of their description of the stipulation, plaintiffs cite to a partial transcript from a hearing on plaintiffs' objections to the sale of Warsun's assets. Though excerpts of that transcript have been included as Defs.' Ex. 5, the portions cited by plaintiffs were not provided to the Court.

**3.** Chidi Ibisi, an ex-officer of Warsun on assignment in Nigeria, was also named as a defendant in the adversary proceeding.

**4.** The adversary proceeding is styled *In Re Warsun Communications Corp.*, Case No. 02–84010–SSM, *Warsun Int'l Communications Corp. v. Yussar Abrar, Hassan Abbey, and Chidi Ibisi*, Adversary Proc. # : 02–08178–SSM.

**5.** Abrar and Abbey have not filed counterclaims in the adversary proceeding.

gerian court to prevent Modern Africa, DiscoveryTel, Cashin, and Helmboldt from interfering with their interests in Warsun Nigeria.[6] Prompted perhaps by this action in Nigeria, on September 11, 2002, Warsun asked the Bankruptcy Court to enjoin the plaintiffs from violating the automatic stay. (Am.Compl.¶ 230.) Finding that the plaintiffs had violated the automatic stay, the Bankruptcy Court issued a preliminary injunction on September 19, 2002, enjoining plaintiffs from undertaking any litigation in any other court to determine ownership rights of Warsun Nigeria.[7] (Defs.' Ex. 6 [Prelim. Inj.].)

### III. The D.C. Action

It is against this backdrop that plaintiffs have brought the current action. In their Amended Complaint, plaintiffs allege the following: (1) breach of fiduciary duty to plaintiffs, as minority shareholders of Warsun, by Modern Africa (Count I); (2) conversion of plaintiffs' interest in Warsun (Count II);[8] (3) violations of 18 U.S.C. §§ 1962(c) and (d), the Racketeer Influenced and Corrupt Organization Act ("RICO") (Count IV); (4) conversion of plaintiffs' interest in Warsun Nigeria (Count V); (5) interference with plaintiffs' prospective economic advantage (Count

VI); and (6) conspiracy (Count VII). On October 6, 2003, defendants moved to transfer these claims to the Bankruptcy Court, or in the alternative, to dismiss plaintiffs' claims. Plaintiffs oppose defendants' motion, arguing that the claims in this case are unrelated to those raised by the bankruptcy proceeding, including the adversary proceeding, and thus, this matter is not properly transferrable, and it is not subject to dismissal based on Fed. R.Civ.P. 12(b)(6) or any of the rulings or orders entered by the Bankruptcy Court.

### LEGAL ANALYSIS

#### I. Motion to Transfer

▇▇▇▇ Defendants seek transfer of this case pursuant to 28 U.S.C. § 1404(a) and § 1412.[9] The threshold question in deciding a transfer motion is determining whether this action could have been brought in the proposed transferee court at the time the complaint was filed. Thus, this Court must determine first whether the Bankruptcy Court would have had jurisdiction over this action. This involves a two-part analysis. First, the bankruptcy court must have subject matter jurisdiction over the matter under 28 U.S.C. § 1334(b). *In re Fed. Deposit Ins. Corp. v. Majestic Energy Corp.*, 835 F.2d 87, 90

---

6. In their Amended Complaint, plaintiffs allege that defendants conducted or facilitated various illegal acts—including attempted extortion, as well as threatened and actual violence—to convert plaintiffs' interests in Warsun Nigeria and to take possession of Warsun Nigeria's assets and facilities. (Am. Compl.¶¶ 221–248.)

7. Plaintiffs filed an affidavit regarding ownership of Warsun Nigeria in the Nigerian court, and as a result, the Bankruptcy Court held them in contempt of the preliminary injunction and imposed sanctions. (Defs.' Ex. 9 [Order of Contempt].)

8. In Count III, plaintiffs alleged that DiscoveryTel aided and abetted Modern Africa in

improperly causing Warsun to file for bankruptcy and squeezing out plaintiffs as minority shareholders. Because the Court granted plaintiffs' motion to dismiss DiscoveryTel, Count III will also be dismissed.

9. 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1412 allows a district court to transfer "a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

(5th Cir.1988). "[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [of the Bankruptcy Act], or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Thus, there is federal jurisdiction not only when the claim arises under title 11 or in a title 11 case, but also if the claim is "at least 'related to' a case under Title 11." *Searcy v. Knostman,* 155 B.R. 699, 703 (S.D.Miss.1993). The usual articulation of the test for determining whether a claim is "related to" a bankruptcy case is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984); *see also Celotex Corp. v. Edwards,* 514 U.S. 300, 308 & n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (applying the *Pacor* test); *In re McGuirl,* No. 90–00141, 90–00142, 2001 WL 1798478, at *6 (Bankr.D.D.C. Nov.30, 2001) (same); *Atkinson v. Kestell,* 954 F.Supp. 14, 16 (D.D.C.1997) (same).

■ Second, if subject matter jurisdiction is found under § 1334(b), then the extent to which a bankruptcy court, rather than a district court, can adjudicate the matter must be determined pursuant to 28 U.S.C. § 157. *Fed. Deposit Ins. Corp.,* 835 F.2d at 90 (the bankruptcy court's power to adjudicate the case depends on whether the matter is a "core" or "non-core" proceeding). A bankruptcy obtains its jurisdiction by referral from the federal district court under 28 U.S.C. § 157(a). Exercising this referred jurisdiction, a bankruptcy court may hear and determine "core proceedings"—those that "aris[e] under" title 11 of the Bankruptcy Code or "aris[e] in" a case brought under that title. 28 U.S.C. § 157(b)(1) ("Bankruptcy judges may hear and determine all cases under title 11 and all *core proceedings arising under* title 11, *or arising in* a case under title 11 ... and may enter appropriate orders and judgments ....") (emphasis added).[10] Other proceedings that are otherwise related to title 11 cases are considered non-core proceedings. "A bankruptcy judge may hear a proceeding that is *not a core proceeding* but that is otherwise *related to* a case under title 11." 28 U.S.C.

---

10. 28 U.S.C. § 157(b)(2) provides a non-exhaustive list of core proceedings:

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

§ 157(c)(1) (emphasis added). However, in a non-core proceeding, absent consent of the parties, the bankruptcy court has only limited jurisdiction and cannot issue a final judgment, but instead, can only submit proposed findings of fact and conclusions of law to the district court, which in turn can enter a final judgment. *Id.*

 Defendants appear to assume that there is subject matter jurisdiction under 28 U.S.C. § 1334, and thus, they do not specifically address this issue,[11] but instead, they argue that the bankruptcy court can exercise its referred jurisdiction under 28 U.S.C. § 157 because the proceeding is either "relat[ed]" to a case under title 11 (Defs.' Mot. at 10) or is a "core proceeding." (Def.'s Reply at 5.) While plaintiffs claims *are* factually related to the bankruptcy case, this is not enough to justify a finding of subject matter jurisdiction in the Bankruptcy Court, for common issues of fact will not automatically render a civil proceeding "related to" the bankruptcy proceeding. *Pacor*, 743 F.2d at 994. Although plaintiffs' claims may be "related to" debtor's bankruptcy proceeding in a colloquial sense, in a legal sense, they are not.

For instance, in a case similar to the instant one, the Bankruptcy Court for the Southern District of Ohio held that, where majority shareholders of a debtor in bankruptcy were accused of breaching fiduciary duties to minority shareholders, that claim was not "related to" the debtor's bankruptcy proceeding. *In re Opti–Gage*, 128 B.R. 189, 196 (Bankr.S.D.Ohio 1991). In reaching its conclusion, the *Opti–Gage* court considered factors that are instructive here—no monetary award was sought from the debtor, the debtor was not ultimately responsible for any damages, determination of the claim did not adjust the debtor's rights or liabilities, and the claim did not concern any joint conduct of the debtor and the defendants. *Id. See also In re Macnichol*, 240 B.R. 731, 732 (Bankr. S.D.Ohio 1999) (bankruptcy court lacked jurisdiction over creditor's common law fraud and RICO claims against nondebtor defendant); *In re Remington Dev. Group, Inc.*, 180 B.R. 365, 369 (Bankr.D.R.I.1995) (bankruptcy court lacked jurisdiction over indemnity claim that the creditor had asserted against nondebtor defendants); *Pacor*, 743 F.2d at 994 (an action is "related to" a bankruptcy action "if the outcome could alter the debtor's rights, liabilities, options or freedom of action ... and ... in any way impact[ ] upon the handling and administration of the bankrupt estate.").

As in *Opti–Gage*, no monetary award is sought here from Warsun (the debtor). Because plaintiffs seek monetary damages only from Modern Africa, Cashin, and Helmboldt, any recovery would not infringe upon Warsun's property or assets or those of the bankruptcy estate. Moreover, plaintiffs' recovery would have no

---

11. Defendants make passing reference to the issue of subject matter jurisdiction (*see* Defs.' Mot. at 10), citing only *Larami Ltd. v. Yes! Entertainment Corp.*, 244 B.R. 56 (D.N.J. 2000), for the proposition that plaintiffs' claims are "related to" the bankruptcy matter. That case is factually different from this one. In *Larami*, plaintiff sought legal and equitable relief against the debtor for patent infringement, and though a creditor had taken possession of the infringing goods, the debtor retained a right of redemption in the property sufficient to give it a legal or equita-

ble interest in the property. *Id.* at 59. The plaintiff's claim was "related to" the bankruptcy proceeding because its resolution would "impact the administration of the estate." *Id.* at 60 n. 6. In contrast, unlike *Larami* where the debtor had a right of redemption related to the infringing goods which were at issue in the request for injunctive relief, the debtor's (Warsun) assets here have been sold and the debtor is not a party to these proceedings. Thus, any relief would not affect the debtor or the bankruptcy estate, but only the purchaser of Warsun's assets.

impact on Warsun's rights, liabilities, options, or freedom of action. While the Bankruptcy Court unquestionably has subject matter jurisdiction over issues surrounding the ownership of Warsun Nigeria—which is at issue in the adversary proceeding—this case involves much more. Accordingly, because plaintiffs' claims (with the exception to their claim of ownership of Warsun Nigeria) in this case are not predominantly related to the bankruptcy action, the Bankruptcy Court would lack subject matter jurisdiction under 28 U.S.C. § 1334(b), and therefore, this case cannot be transferred.

 Moreover, even assuming *arguendo* that the Bankruptcy Court had subject matter jurisdiction, this Court would decline to exercise its discretion to transfer. To establish that transfer is appropriate, defendants have the burden of demonstrating that considerations of convenience and the interest of justice weigh in favor of transfer. *DeLoach v. Philip Morris Co., Inc.*, 132 F.Supp.2d 22, 24 (D.D.C.2000); *Trout Unlimited v. United States Dep't of Agric.*, 944 F.Supp. 13, 16 (D.D.C.1996). The district court has discretion to transfer "according to an individualized, case-by-case consideration of convenience and fairness," balancing a number of factors relating to both the private interests of the parties and the interests of the public. *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29–30, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

 The private interest considerations include: (1) plaintiff's choice of forum, unless the balance of convenience is strongly in favor of defendant; (2) defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of

access to sources of proof. *Trout Unlimited*, 944 F.Supp. at 16 (footnotes omitted). The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Id.* (footnotes omitted).

With respect to the private interest considerations, none of the factors favors transfer. Defendants have ties to this District, since Modern Africa and Cashin reside here and Helmboldt maintains an office here. No party would be inconvenienced by a trial either here or in Virginia. And the relevant events occurred both here and in Virginia. *See generally Sparshott v. Feld Entertainment, Inc.*, 89 F.Supp.2d 1, 4 (D.D.C.2000) (declining to transfer a case from this jurisdiction to the Eastern District of Virginia where a bankruptcy suit involving many of the same parties was pending).

 Therefore, defendants rely on public factors to bolster their transfer request. First, they argue that the first-filed rule warrants transfer. (*See* Defs.' Mot. at 17 n. 5 (citing *Wash. Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C.Cir.1980)).) This rule provides that where "two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first." *Id.* at 830 (internal citations and quotation marks omitted). The rule, however, does not apply here, since the adversary proceeding now pending in the Bankruptcy Court is not the same cause of action as the case here. And, to the extent that the adversary proceeding involves the same issue regarding the ownership of Warsun Nigeria, the Court will permit that proceeding to reach a conclusion so as to

avoid duplication and the possibility of inconsistent verdicts. *See* Section II(E).

■ Second, defendants argue that transfer to a district in which a related action is pending is generally favored so as to conserve judicial resources and avoid inconsistent results. However, even if the existence of a related case in another jurisdiction may be relevant, this "is insufficient grounds for transfer." *Sparshott,* 89 F.Supp.2d at 4 (internal citation omitted). This is especially true in this case, since the only issue still unresolved in the Bankruptcy Court is the adversary proceeding.

■ But more importantly, even assuming that transfer were possible, it is problematic that the Bankruptcy Court would have jurisdiction to issue a final judgment as to at least some of the claims raised in this case, since these claims would more than likely be treated as non-core proceedings over which a bankruptcy judge could only (in the absence of consent by the parties) exercise limited jurisdiction.[12] In particular, plaintiffs' state law claims and those relating to pre-petition activities by defendants could well be viewed as non-core, and thus, even though the Bankruptcy Court in Virginia is familiar with this matter, a district court judge in the Eastern District would land up having to adjudicate this matter. *See, e.g., In re Systems Eng'g & Energy Mgmt. Assoc., Inc.,* 252 B.R. 635, 644–50 (Bankr.E.D.Va. 2000) (claims for breach of fiduciary duty, usurpation of corporate opportunity and other business torts are non-core proceedings) and cases cited therein.[13]

Further complicating the matter of transfer is the fact that plaintiffs have requested a jury trial in this case, and under 28 U.S.C. § 157(e) and F.R.

**12.** In a case involving multiple claims, courts are split as to whether to make a core versus non-core jurisdictional determination as to the whole proceeding, *see, e.g., In re Blackman,* 55 B.R. 437, 443–44 (Bankr.D.D.C. 1985), or based on a count-by-count analysis. *See, e.g., Halper v. Halper,* 164 F.3d 830, 838–39 (3d Cir.1999). For purposes of addressing the issue of transfer, however, this Court does not have to resolve this issue but need only note the very real possibility that plaintiffs' claims, or some portion thereof, could be rejected by the Bankruptcy Court as constituting non-core proceedings.

**13.** In their reply, defendants argue that plaintiffs' claims constitute core proceedings, which could be adjudicated by the Bankruptcy Court. (Defs.' Reply at 5.) Defendants cite cases in which defendants' tortious or illegal actions to put the debtor out of business were found to be core proceedings. However, these cases differ in one important respect from the current matter: in each case, the trustee was the plaintiff, and thus, any recovery would inure to the benefit of the bankruptcy estate. For instance, in *In re O'Sullivan's Fuel Oil Co.,* 88 B.R. 17, 18–19 (D.Conn.1988), a trustee in bankruptcy brought an adversary proceeding claiming a creditor violated various common law and federal statutory standards when it took control of debtor's business, resulting in its financial destruction and ultimate bankruptcy. Likewise in *In re Kelton Motors, Inc.,* 121 B.R. 166, 183 (Bankr.D.Vt.1990), the trustee in bankruptcy alleged, *inter alia,* that creditors conspired in bad faith to drive the debtor into bankruptcy. In both cases, the trustees' claims were deemed core proceedings. *O'Sullivan's Fuel,* 88 B.R. at 20–21; *Kelton Motors,* 121 B.R. at 183. Because the trustee brought suit on behalf of and for the benefit of the bankruptcy estate, it is clear that those claims would affect the estate. Here, however, the claims involve nondebtor parties and not a trustee. Although an action need not be against the debtor or against the debtor's property to be "related to" the bankruptcy proceeding, *Halper,* 164 F.3d at 838 (state law claim between non-debtors to enforce a guarantee of debtor's financial obligation was related to the bankruptcy action because it would divert claims from the bankruptcy estate), bankruptcy courts "lack[] jurisdiction to decide disputes between third parties in which the estate of the Debtor has no interest." *In re McConaghy,* 15 B.R. 480, 481 (Bankr.E.D.Va.1981).

Bankr.P. 9015, a bankruptcy judge may conduct a jury trial only if the parties expressly consent and if the district court has specially designated the bankruptcy judge to conduct the jury trial.

In sum, transfer is not warranted here for several reasons. Foremost, the Bankruptcy Court in the Eastern District of Virginia lacks subject matter jurisdiction over this matter. But even if it did have jurisdiction, neither the public nor the private factors favor transfer, especially given the likelihood that the Bankruptcy Court could not fully adjudicate claims which would probably be characterized as non-core proceedings. Thus, transfer would not serve the purpose of conserving judicial resources.

## II. Motion to Dismiss

In the alternative, defendants move to dismiss this action. Defendants contend that Count VI fails to state a legally viable claim, and that the remaining claims are barred by the Bankruptcy Court's order approving Warsun's asset sale and barring all further claims against those assets (Counts I, II, and VII); collateral estoppel and waiver (Counts I, II, and VII); and the Bankruptcy Court's preliminary injunction (Counts IV, V, VI, and VII).

### A. Legal Standard Applicable to Motion to Dismiss

■ Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate only where a defen-

dant has "show[n] 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *In re Swine Flu Immunization Products Liability Litigation,* 880 F.2d 1439, 1442 (D.C.Cir.1989) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The allegations in plaintiffs' complaint are presumed true for purposes of a 12(b)(6) motion, and all reasonable factual inferences should be construed in plaintiffs' favor. *Maljack Productions, Inc. v. Motion Picture Ass'n of Am.,* 52 F.3d 373, 375 (D.C.Cir.1995); *Phillips v. Bureau of Prisons,* 591 F.2d 966, 968 (D.C.Cir.1979). If factual matters outside the pleadings are submitted and considered by the Court, however, a 12(b)(6) motion must be treated as a summary judgment motion under Fed.R.Civ.P. 56. *See* Fed.R.Civ.P. 12(b).[14]

### B. Failure to State a Claim: Count VI

■ To state a claim for interference with economic advantage, plaintiffs must allege (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage. *Bennett Enter., Inc. v. Domino's Pizza, Inc.,* 45 F.3d 493, 499 (D.C.Cir.1995). Defendants argue, relying on *Bell v. Ivory,* 966 F.Supp. 23, 31 (D.D.C.1997), that plaintiffs

14. Plaintiffs contend that defendants' motion, which includes as attachments various Bankruptcy Court documents and a declaration, should be treated as a summary judgment motion. (Pls.' Opp. at 13 (citing *Marilyn Simpkins v. United States,* 253 F.Supp.2d 4, 5 (D.D.C.2003)).) However, in a motion to dismiss, the Court may consider facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which the Court may take judicial notice. *Baker v. Henderson,* 150 F.Supp.2d 17, 19 n. 1 (D.D.C.2001). In support of their motion, defendants submit an officer declaration and documents that have been submitted to the Bankruptcy Court. The court documents do not convert this to a summary judgment motion, and the officer declaration was submitted in support of the motion to transfer only, not the motion to dismiss. (Defs.' Reply at 8.) Accordingly, this motion is properly treated as one to dismiss.

have failed to state a claim in Count VI because any business opportunities that would have accrued to plaintiffs in their capacity as officers, directors or controlling shareholders of Warsun Nigeria belonged to the company, not plaintiffs, and as such, plaintiffs cannot satisfy the first element of a claim for interference with economic advantage.

■ While it is true, as argued by plaintiffs (Pls.' Opp. at 15), that *Bell* involved an employee, and not officers, directors, or shareholders, that does not resolve the matter. As is clear from the allegations in Count VI, plaintiffs are claiming that Warsun Nigeria's business opportunities were interfered with and they, "in their capacity as officers, directors and controlling shareholders of Warsun Nigeria," were thereby injured. (Am.Compl.¶¶ 288–89.) In effect, they are alleging that the company was injured and they suffered derivative injuries as a result of their positions as officers, directors and shareholders. As discussed more fully *infra* (*see* Section II(C)), plaintiffs' claims belong to the corporate entity—Warsun Nigeria—and not to them as individuals. And, where the requirements of a derivative suit have not been satisfied, plaintiffs cannot bring a derivative suit on behalf of the corporation. Therefore, plaintiffs are not entitled to sue as a result of Warsun Nigeria's loss of business opportunities, and Count VI will be dismissed.

## C. Bankruptcy Court's 363 Order

Defendants claim that Counts I, II, and VII are barred by the Bankruptcy Court's 363 Order, which granted Warsun's motion to sell all of its assets free and clear of interests, liens and encumbrances, and to assume and assign certain contracts to Modern Africa. Defendants contend that plaintiffs' claims belong to the bankruptcy estate, not to plaintiffs personally. However, defendants paint plaintiffs' claims with too broad a brush. To determine whether plaintiffs' claims indeed belong equally to all shareholders (and thus to the bankruptcy estate) or to plaintiffs personally, a closer look at relevant law and each of plaintiffs' claims is required.

■ Defendants are correct that the bankruptcy estate includes all legal or equitable interests of the debtor. (Defs.' Mot. at 22 (citing *Field v. Transcon. Ins. Co.*, 219 B.R. 115, 118–19 (E.D.Va.1998), *aff'd*, 173 F.3d 424 (4th Cir.1999)).) However, whether plaintiffs' claims are legal interests that belong to the bankruptcy estate turns on whether plaintiffs' claims belong to the corporation, and as such must be brought as a derivative suit.[15] *Kennedy*, 348 F.3d at 589 (a derivative suit "is an asset of the bankrupt estate"); *In re Greenwood Supply Co.*, 295 B.R. 787, 794 (Bankr.D.S.C.2002) (same). Conversely, if the claim did not belong to the corporation, the shareholder retains the right to bring a direct action.

■ Of importance, then, is whether a shareholder's cause of action is derivative or direct. The law of this Circuit provides that "[w]hen an injury to corporate stock *falls equally upon all stockholders*, then an individual stockholder may not recover for the injury to his stock alone, but must seek recovery derivatively in behalf of the corporation." *Cowin v. Bresler*, 741 F.2d 410, 414 (D.C.Cir.1984) (emphasis in original). But when the injury falls specifically on a minority stockholder, a

---

**15.** When a corporation is injured by a wrongful act but the board of directors refuses to seek relief, a shareholder can, after complying with Fed.R.Civ.P. 23.1, sue the wrongdoer on behalf of the corporation in what is known as a derivative suit. *Kennedy v. Venrock Assoc.*, 348 F.3d 584, 589 (7th Cir.2003).

direct action is appropriate. *Id.* at 415. Plaintiffs allege in Count I that defendant Modern Africa breached the fiduciary duty that it, as majority shareholder of Warsun, owed to plaintiffs who were minority shareholders. (Am.Compl.¶¶ 262–63.) Defendants quite correctly argue that in order for plaintiffs to recover individually in a direct action, they must assert some specific injury. (Defs.' Mot. at 22 (citing *Mullins v. First Nat'l Exch. Bank of Va.,* 275 F.Supp. 712, 721 (W.D.Va.1967) (direct suit was inappropriate where a shareholder sued for tortious interference with a corporation's property after a third party, which was not a shareholder, froze the corporation's assets)).) However, an injury to only minority shareholders is, quite plainly, not one that falls equally on all stockholders. *Kennedy,* 348 F.3d at 589 (the breach of a majority shareholder's fiduciary duty to a minority shareholder is a "wrong to the minority shareholder rather than to the corporation" and, as such, it should not be "force[d] ... into the derivative mold"). Accordingly, to the extent that plaintiffs' claims relate to a breach of fiduciary duty by Modern Africa, these claims do not belong to the bankruptcy estate, they need not be brought as a derivative action, and they are not barred by the 363 Order.

■ However, many of plaintiffs' claims do not relate to a breach of fiduciary duty, but rather, they involve harms that belong to Warsun.[16] For instance, the complaint is replete with allegations of mismanagement by Modern Africa, including claims that Modern Africa restricted Warsun's access to funding and caused the company to improperly file for bankruptcy. (*See, e.g.,* Am. Compl. ¶¶ 61–62, 69, 178.) "Claims of corporate mismanagement must be brought on a derivative basis because no shareholder suffers a harm independent of that visited upon the corporation and the other shareholders." *Cowin,* 741 F.2d at 414. Because each shareholder is injured in proportion to his or her equity interest, "each will be made whole if the corporation obtains compensation or restitution from the wrongdoer" through a derivative action. *Id.* (internal citation and quotation marks omitted). Thus, to the extent that plaintiffs' claims relate to Modern Africa's mismanagement of the corporation or to other matters that affect all shareholders equally, these claims should have been brought in a derivative action and are assets of the bankruptcy estate. As such, they are not properly before this Court, and they will be dismissed.

■ With respect to Count II, which alleges that defendants converted plaintiffs' interest in Warsun and Count VII, which alleges a conspiracy, it is not, however, possible to determine which specific allegations belong to the corporation and which represent special harms inflicted on plaintiffs in their distinct status as minority shareholders. Given the fact that both types of claims appear to be inextricably intertwined in these counts, the Court cannot, at this time, conclude that they should be dismissed as barred by the 363 Order.[17]

16. Plaintiffs' complaint contains over two hundred and ninety paragraphs, including thirty-three pages of what is referred to as "Facts Common to All Claims." The Court is unwilling to parse each of these paragraphs to identify which claims can be brought directly by the plaintiffs, as opposed to the corporation. Instead, examples have been provided for illustrative purposes.

17. It is possible that a claim of conversion of plaintiffs' equity interests could be equated with a claim that the majority shareholders plundered the interests of the minority shareholders, thus permitting a direct suit against the majority shareholders. However, as already discussed, the claim in Count VII that defendants "interfere[d] with Warsun Nigeria's prospective business opportunities" (Am.

In sum, plaintiffs' claims are dismissed to the extent they relate to injuries suffered by all shareholders equally. But to the extent that plaintiffs' claims relate to the fiduciary duty owed them by the majority shareholders, they are not barred by the Bankruptcy Court's 363 Order.[18]

### D. Collateral Estoppel and Waiver

■ Defendants also claim that Counts I, II, and VII are barred by collateral estoppel. Collateral estoppel prevents repetitive litigation of the same issue. "Under the issue preclusion aspect of res judicata, a final judgment on the merits in a prior suit precludes subsequent relitigation of issues actually litigated and determined in the prior suit, regardless of whether the subsequent suit is based on the same cause of action." *NextWave Pers. Communications, Inc. v. F.C.C.*, 254 F.3d 130, 147 (D.C.Cir.2001). *See also Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C.Cir.1983) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.").

■ Defendants' claim that adjudication of plaintiffs' claims here will amount to a relitigation of issues previously decided by the Bankruptcy Court in the sale proceeding is not well founded. There, plaintiffs objected to the sale on the grounds that Modern African engaged in inequitable conduct and demonstrated bad faith in attempting to effect the sale of Warsun's assets. (Defs.' Ex. 10 [Pls.' Objection to Mot. to Sell Assets].) However, in approving the sale, the Bankruptcy Court did not adjudicate these issues as a necessary part of its judgment, rather it merely approved the sale after determining that it was negotiated in good faith and that there was no better offer. (Defs.' Ex. 5 [Partial Tr.] at 57; Defs.' Ex. 11 [363 Order].) This ruling cannot, therefore, serve to bar plaintiffs' claims regarding Modern Africa's conduct prior to purchasing Warsun's assets.

■ Defendants also claim that plaintiffs should have brought the claims asserted in Counts I, II, and VII in the Bankruptcy Court as a challenge to the debtor's bankruptcy petition, and having failed to have done so, they are effectively waived. (Defs.' Mot. at 21.) Defendants present this argument without citation to any legal authority, but merely argue that plaintiffs should have raised these claims as a challenge to the petition so the Bankruptcy Court could have made a determination of "whether the letter of the bankruptcy law was being followed." (*Id.* at 21.) In another section of their motion, defendants appear to be trying to bolster their waiver argument by asserting that plaintiffs' claims "should have been filed, if at all, as a compulsory counterclaim in the Adversary Proceeding." (Defs.' Mot. at 12 (citing Fed.R.Civ.P. 13(a)).)

---

Compl.¶ 292) belongs to the corporation and not to plaintiffs.

18. Defendants also contend that plaintiffs' claims arose before the asset sale, which was finalized on December 20, 2002. (Defs.' Mot. at 23.) Defendants apparently make this assertion to shore up the argument that the 363 Order—which barred all claims arising prior to the sale's closing—operated to bar plaintiffs' claims. However, defendants' contention is inconsistent with at least portions of plaintiffs' Amended Complaint. For example, plaintiffs allege that in early 2003, participants in the alleged conspiracy undertook violent activities interfering with plaintiffs' alleged rights to Warsun Nigeria. (Am. Compl.¶¶ 235–242.) So even if claims arising prior to the sale's closing were barred by the 363 Order, those claims arising post-sale are not.

But defendants' reliance on Fed.R.Civ.P. 13(a) is misplaced. That rule requires a party to state a counterclaim "against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim ...." *Id.* However, Modern Africa, Helmboldt and Cashin are not "opposing parties" in the adversary proceeding—indeed, they are not parties to that proceeding at all. As a result, plaintiffs' claims against defendants here cannot be characterized as compulsory counterclaims,[19] and therefore, there is no basis for arguing that these claims against third parties have been waived by plaintiffs' failure to present them to the Bankruptcy Court.

### E. Bankruptcy Court's Preliminary Injunction

■ Defendants allege that the Bankruptcy Court's Preliminary Injunction of September 19, 2002 bars plaintiffs' claims in Counts IV, V, VI, and VII. The injunction barred plaintiffs from taking action to acquire Warsun's shares of Warsun Nigeria, commencing litigation in other courts to determine the ownership and management rights of that company, and interfering with Warsun employees' access to Warsun property. (Defs.' Ex. 6 [Prelim. Inj.].) While this Court recognizes that the claims currently before it appear to be encompassed by the injunction, this Court will not interpret or enforce that court's injunction. The Bankruptcy Court is aware of this action, and obviously, it can proceed to take whatever action is necessary.

However, the adversary proceeding is still pending. While the Bankruptcy Court's injunction in that proceeding obviously does not collaterally estop plaintiffs from bringing their claims here at this time (*see* Defs.' Reply at 9–10), at least some of plaintiffs' claims will in all probability be determined by the adversary proceeding. For instance, in this case, plaintiffs' claims are premised on their positions as directors of Warsun Nigeria and as owners of that company. However, in the adversary proceeding, DiscoveryTel alleges that neither plaintiff is an officer and that plaintiffs improperly obtained an ownership interest in Warsun Nigeria. (Defs.' Ex. 3 [Adversary Proceeding Compl.] ¶¶ 12, 15.) Thus, the resolution of plaintiffs' role in Warsun Nigeria is at issue in both cases and will impact each of the remaining counts (except Count II) of plaintiffs' complaint.

Given the posture of these cases and the substantial overlap of issues, the Court will exercise its discretion to stay this action pending resolution of the adversary proceeding, which is set for pretrial conference this month. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). In this way, the possibility of inconsistent results will be avoided, and the time and resources of the court and the parties will be conserved.

---

19. In fact, any claim in the adversary proceeding by Abbey and Abrar against Modern Africa, Cashin, or Helmboldt would have been a cross claim against a third party. It is well-settled that these are not compulsory. Fed. R.Civ.P. 14(a) authorizes a defendant to bring into a lawsuit any person "not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." "This language does not compel defendant to bring third parties into the litigation; rather, it simply permits the addition of anyone who meets the standard set forth in the rule." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1446 (2d ed.1990).

**610**

## CONCLUSION

For the reasons stated above, the Court will deny defendants' motion to transfer venue. Further, the Court will grant defendants' motion to dismiss with respect to Counts III and VI and with respect to those claims that have been improperly brought in a direct action (those belonging to the corporation or all shareholders equally). As to the remainder of plaintiffs' claims, defendants' motion to dismiss will be denied. However, the Court stays further proceedings in this case until the United States Bankruptcy Court for the Eastern District of Virginia resolves the adversary proceeding now pending before it. A separate Order accompanies this Memorandum Opinion.

## *ORDER.*

For the reasons given in the attached Memorandum Opinion, it is hereby

**ORDERED** that defendants' Motion to Transfer Venue is **DENIED**; it is

**FURTHER ORDERED** that defendants' Motion to Dismiss is **GRANTED** with respect to Counts III and VI and to plaintiffs' claims that relate to all shareholders equally, but it is **DENIED** as to the remainder of plaintiffs' claims; it is

**FURTHER ORDERED** that further proceedings in this Court are stayed until proceedings now pending before the United States Bankruptcy Court for the Eastern District of Virginia are resolved.

**SO ORDERED.**